

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable R. A. Earton
County Attorney
Calhoun County
Port Lavaca, Texas

Dear Sir:

Opinion Number O-5432
Re: Can the City of Port Lavaca
expend seawall funds for a
different purpose from that
submitted to the voters?

We are in receipt of your letter of recent date, reading as follows:

"I am writing you at the request of the Mayor and the City Commission of the City of Port Lavaca, Texas, in order that we may have your opinion as to the legality of a proposal to expend some fifty thousand dollars of the funds now on hand in the City Depository which were derived from the sale of bonds voted by the City under the provisions of H.B. No. 7 as passed at the regular session of the 47th Legislature and known as the Port Lavaca Sea Wall Act.

"You will recall that your Department has heretofore rendered an Opinion No. O-4117 as to the Constitutionality of such act in which it was held:

" 'That House Bill No. 7 supra, wherein it seeks to remit taxes to construct seawalls or breakwaters is not violative of the Constitution of Texas, but

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable R. A. Barton, page #2

that it is unconstitutional in so far as it
seeks to remit taxes to construct Harbors. We
further hold that the striking of the word
"HARBORS" from the bill does not invalidate
the balance thereof.'

"The City Commission is determined to abide
by your opinion as to the legal use of these
funds and it is for that reason that we request
that you reconsider that part of your opinion
No. 0-4117 on page 3 in which you state:

" 'We are of the opinion that by no stretch
of the imagination could the term "Harbor" be
included within the meaning of the words, "Sea-
wall and Breakwaters? '

"In order that you may understand the basis
of our request and the need that faces the Com-
mission let us present these facts. None of the
moneys accruing from the sale of these bonds,
though voted in 1941 have been expended, because
we felt that the construction of our much needed
seawall here in front of town might impede the
war efforts as it would take labor and critical
materials, so we are investing such funds in war
bonds. Now the U. S. Engineers of the Department
of War have determined the need for a Storm Harbor
for the protection of Government vessels and those
supplying the army camps at Indianola, Matagorda
Island and Matagorda Peninsula.

"The plans are all complete for this structure
and the U. S. Engineers now request that the City
expend some fifty thousand dollars in the project.
The location of the proposed storm harbor of refuge
is about one mile south of the City limits of the
City of Port Lavaca. We have explained that your
prior opinion is binding upon us but they present
that the harbor will be actually dredged with
Federal funds so that the City will not be expend-
ing its funds from the construction of a harbor

Honorable R. A. Barton, page #3

but in protecting the mouth of the harbor by the construction of necessary breakwaters and by the building of wharves, docks and tie up moorings for the protection of shipping. We desire to aid the war efforts if possible by aiding in the protection of Government property and you can help us determine our course of action by answering the following questions:

"1. Can the City of Port Lavaca expend seawall funds derived under House Bill No. 7 on a project, to be situate approximately a mile from the existing city limits, to be a harbor of refuge for boats, on City acquired property, where such structure will not protect existing property now within the City limits?

"2. Would such expenditure be legal if said property is taken into the City limits, either by a vote of the people or by any other manner authorized by law?

"3. Can the City of Port Lavaca expend such seawall funds to aid the Federal Government in the construction of a storm harbor, if such funds are used only for breakwaters, wharves, and docks?

"We will appreciate your serious consideration of both the law and the necessity of action with which we are confronted. We have no other funds and our tax limit is exhausted."

Replying to the foregoing, you are advised that we adhere to the opinion expressed by us in Opinion No. O-4117 to the effect that the term "Harbor" is not included within the meaning of the words "Seawalls and Breakwaters".

An examination of the proceedings authorizing the issuance of City of Port Lavaca Seawall and Breakwater Bonds in 1941 discloses that the City Commission made the following statement in the election order, notice of election and ordinance authorizing the issuance of the bonds: "For the purpose

of constructing, repairing and improving seawalls and breakwaters to protect the City of Port Lavaca from continuing and recurring calamitous overflows, which improvements are, in the opinion of the City Commission, essential to adequate protection of said City." This statement constituted a pledge to the voters that the money derived from the sale of the bonds would be expended to protect the city of Port Lavaca. In the case of Strength v. Black, 246 S. W. 79, the Supreme Court held that after designating roads to be improved prior to road bond election, commissioners' court could not change such designation after the election. In our opinion the construction of breakwaters, wharves and docks to protect a harbor a mile south of the city limits is a different purpose from the one submitted to the voters. Again, the purpose as submitted is entirely consistent with the language contained in Article 11, Section 8 of the Constitution, which authorizes the Legislature to aid by donation . . . the construction of seawalls and breakwaters, but, as held in our Opinion No. O-4117, does not authorize such donation for the construction and improvement of harbors.

With reference to your second question, there is no authority for a city operating under the general law to extend its limits, except that contained in Article 974, which authorizes the addition of territory adjoining the limits of any city to the extent of one-half mile in width. See City of Gladewater v. State ex rel. Walker, 137 S. W. (2d) 641. Even if the City of Port Lavaca could extend its boundaries, we are of the opinion that the situation would not be different, since the purpose for which the bonds were voted clearly contemplated the construction of seawalls and breakwaters to protect the City of Port Lavaca as it existed at the time the election was held.

As indicated above, we answer all three of your questions in the negative.

APPROVED AUG 6, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By C. F. Gibson

C. F. Gibson
Assistant

CFG-s
ok
c.c.R.

APPROVED
OPINION
COMMITTEE
BY BWB